IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLORIA WASHINGTON, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> VOLUNTEERS OF AMERICA, ET AL., : <br> : <br> Defendants. : | CIVIL ACTION <br><br> NO. 05-CV-4186 |

**MEMORANDUM AND ORDER**

**Tucker, J.**                                                                                       **August __, 2007**

Presently before this Court is the Motion for Summary Judgment of Defendant Huston Johnson (Doc. 48). For the reasons set forth below, upon consideration of Defendant Johnson's Motion and Brief (Doc. 54), Plaintiff's Response thereto (Doc. 59, 60) and Defendant's Reply (Doc. 63), this Court will grant in part and deny in part Defendant's Motion.

**BACKGROUND**[1]

From the evidence of record, taken in light most favorable to Plaintiff, the pertinent facts are as follows. Plaintiff Gloria Washington is a 55 year-old woman who began working at Volunteer of America ("VOA") as an Operations Coordinator in September 2003 at the age of 52. Plaintiff worked at VOA approximately 16 months before VOA terminated her employment in January 2005. Plaintiff generally maintains that she was terminated from employment because she refused to engage in a sexual relationship with her former supervisor, Defendant Huston

---

[1] Throughout Plaintiff's Response to Defendant's Motion, Plaintiff makes factual representations without clear citations to the record. As this contravenes this Court's rules, this Court will not consider those "facts" as it rules on Defendant's Motion.

Johnson. VOA, however, states that Plaintiff was terminated from employment due to her unsatisfactory work performance.

As an Operations Coordinator at VOA, Plaintiff reported directly to Defendant Johnson, who was Chief Operating Officer at VOA. Plaintiff's primary job responsibilities included supporting and interacting with Johnson and three VOA program directors and their staff. Additionally, Plaintiff assisted the program directors to comply with program requirements and to maintain quality standards. Plaintiff also processed VOA personnel forms and conducted background checks.

In January 2004, at the end of Plaintiff's probationary employment period, Defendant Johnson rated Plaintiff's overall employment performance as "good" on her employee performance evaluation. In March 2004, VOA granted each Operations Coordinator, including Plaintiff, a raise in annual salary to $40,000.00 per year. To Plaintiff, this raise represented a $7,000.00 increase in her base salary. While Plaintiff met on a monthly basis with Johnson to review her work performance, Johnson did not complete any other official performance evaluations for Plaintiff. Further, Plaintiff's employment file does not show that she was reprimanded or disciplined for any violations of workplace policies or procedures while employed at VOA.

Plaintiff alleges that in January 2004, she had non-consensual sexual relations with Defendant Johnson while the two were in New Orleans for a VOA-sponsored conference. Plaintiff further alleges that in February 2004, she had non-consensual sexual relations with Defendant Johnson at a hotel in New Jersey. Following these two sexual encounters, in March 2004, Plaintiff alleges that she informed Defendant Johnson that she had a boyfriend and that she

did not want to engage in any further sexual activity with Johnson. Plaintiff also alleges that during this time, Defendant Johnson called her on her work cell phone to inquire her whereabouts and to otherwise engage in sexual flirtation. Defendants VOA and Johnson, however, deny any sexual relations between Plaintiff and Johnson.

After she confronted Defendant Johnson and informed him that she no longer wanted to have a sexual relationship with him, Plaintiff alleges that she was subjected to unfavorable working conditions including being moved to an undesirable work cubicle, losing her access to a VOA-issued cell phone, having her authority undermined in the chain of command, and not receiving adequate training and support from Defendant Johnson in dealing with program coordinators. Plaintiff also alleges that in December 2005, Defendant Johnson hit Plaintiff on the arm while both were working at VOA.

Plaintiff also alleges that she was treated unfavorably by Defendant Johnson because of Plaintiff's age. Plaintiff was 53 years old at the time of her termination from employment at VOA. Further, the record shows that Plaintiff was replaced by a male employee who was four years older than Plaintiff.

VOA maintains a policy prohibiting sexual harassment in the workplace. VOA's policy includes a reporting scheme. Plaintiff admits that she received a copy of VOA's policy. Plaintiff alleges that in the weeks prior to her discharge from employment, she sought to meet with VOA human resources personnel to discuss her dissatisfaction with working with Defendant Johnson. Plaintiff, however, did not meet with anyone in the human resources department prior to her termination from employment.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis of its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[I]f the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against opponent, even if the quality of the

4

movant's evidence far outweighs that of its opponent." <u>Big Apple BMW, Inc. v. BMW of North America, Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. <u>Anderson</u>, 477 U.S. at 255.

## **DISCUSSION**

In her Complaint, Plaintiff alleges that Defendant Johnson (1) committed quid pro quo sexual discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New Jersey Law Against Discrimination ("NJLAD") (Counts One and Nine); (2) retaliated against Plaintiff in violation of Title VII and the NJLAD (Counts Two and Nine); (3) subjected Plaintiff to a hostile work environment due to her gender in violation of Title VII and the NJLAD (Counts Three and Nine); and (4) subjected Plaintiff to age discrimination in violation of the Age Discrimination in Employment Act ("ADEA) and the NJLAD (Count Four and Nine). Further, Plaintiff alleges that Defendant Johnson is liable to Plaintiff under tort claims of assault and battery (Count Ten), Intentional Infliction of Emotions Distress (Count Eleven), and Negligent Infliction of Emotional Distress (Count Twelve).

Defendant Johnson ask this Court to grant summary judgment in his favor on all counts of the Complaint directed towards Johnson on the grounds that Plaintiff has failed to state an actionable claim of discrimination under Title VII and the ADEA because there is no individual liability under those statutes. Defendant Johnson also argues that this Court should dismiss Plaintiff's NJLAD claims because Plaintiff cannot show he is an employer under the NJLAD. Further, Defendant Johnson argues that Plaintiff's Negligent Infliction of Emotional Distress claim is barred by the New Jersey workers' compensation scheme. Last, Defendant argues that

this Court should decline supplemental jurisdiction over Plaintiff's remaining state law claims.

The Court will review each claim in turn.

**A.      Claims Under Title VII and the ADEA**

In his motion for summary judgment, Defendant Johnson argues that Plaintiff's gender and age discrimination claims under Title VII (Counts One, Two and Three) and the ADEA (Count Four) should be dismissed because there is no individual liability under those statutes. This Court agrees.

Claims against individual supervisors are not permitted under Title VII. Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1077-78 (3d Cir. 1996); Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir. 2001); Dici v. Com. of Pa., 91 F.3d 542, 552 (3d Cir. 1996).  Similarly, the U.S. Court of Appeals for the Third Circuit has recently stated that the "ADEA does not provide for individual liability." Hill v. Borough of Kutztown, 455 F.3d 225, 246 n.29 (3d Cir. 2006). Accordingly, Plaintiff's Title VII and ADEA claims against Johnson are dismissed as a matter of law.

**B.      Claims Under New Jersey Law**

  1.      Gender Discrimination Claims Under the NJLAD

Defendant Johnson argues that this Court should dismiss Plaintiff's gender discrimination claims under the NJLAD because Johnson is not an employer under the law and is not subject to the NJLAD's "aider and abetter" provision.  This Court disagrees.

The NJLAD prohibits unlawful employment practices by an "employer," as that term is defined under the law. Tarr v. Ciasulli, 853 A.2d 921, 927-28 (N.J. 2004).  While a person in a supervisory capacity is not an "employer" under the NJLAD, an individual may nevertheless be

liable under N.J.S.A. 10:5-12(e) if he "aids or abets" others (namely, an employer) in committing acts forbidden by the law.  Hurley v. Atlantic City Police Dept., 174 F.3d 95, 126 (3d Cir. 1999); Tarr, 853 A.2d at 928-29.  Indeed, the Third Circuit has stated that "employee aids and abets a violation of the [NJ]LAD when he knowingly gives substantial assistance or encouragement to the unlawful conduct of his employer."  Failla v. City of Passaic, 146 F.3d 149, 158 (3d Cir. 1998).  Further, the Third Circuit has found that a supervisor "may be liable as an aider and abettor for active harassment or knowing and willful inaction" under the NJLAD.  Hurley, 174 F.3d at 128.  The Third Circuit reasoned that a supervisor has a duty under New Jersey law to act against harassment, and a supervisor's violation of this duty by either deliberate indifference or affirmative harassment subjects the supervisor to liability under the NJLAD.  Id.

This Court, therefore, finds that there exists a legal basis under the NJLAD to impose individual liability against Defendant Johnson.  Accordingly, this Court denies Defendant Johnson's motion for summary judgment on Plaintiff's gender discrimination claims under the NJLAD.[2]

    2.    Age Discrimination Claims Under the NJLAD

In the Complaint, Plaintiff alleges that Defendant Johnson discriminated against her on the basis of age in violation of the NJLAD.  As explained above, however, Defendant Johnson may be individually liable under the NJLAD only if he "aids or abets" Defendant VOA in committing acts forbidden by the law.  Here, this Court has found that Defendant VOA is entitled

---

[2] This Court also finds that Plaintiff has submitted sufficient evidence to support her claim that Johnson aided and abetted the alleged unlawful acts of gender discrimination and sexual harassment.  Here, a jury could rationally find that Johnson substantially assisted Defendant VOA in its violation of the NJLAD by his affirmatively harassing acts.

7

to summary judgment on Plaintiff's age discrimination claims under the NJLAD (and ADEA). Defendant Johnson, therefore, cannot be found to be an "aider or abettor" as contemplated under the NJLAD. Accordingly, this Court dismisses Plaintiff's NJLAD age discrimination claims against Defendant Johnson.[3]

### 3. Negligent Infliction of Emotional Distress[4]

In the Complaint, Plaintiff asserts a claim of negligent infliction of emotion distress ("NIED") against Defendant Johnson. Defendant, however, argues that this common law claim must be dismissed because New Jersey law provides an exclusive remedy by which an employee may recover. This Court agrees.

The New Jersey Workers' Compensation Act, N.J.S.A. 34:15-8, provides an exclusive remedy by which an employee may recover damages for injuries caused by an employer's negligence. Accordingly, Plaintiff cannot seek damages for alleged workplace negligence–as alleged here–in this Court. Plaintiff may, however, seek benefits under New Jersey's workers' compensation scheme.

Accordingly, this Court will grant Defendant Johnson's summary judgment motion on Plaintiff's NIED claim.

---

[3] To the extent Plaintiff alleges that she was subjected to a hostile work environment due to her age, this claim is also dismissed as a matter of law.

[4] Because New Jersey has the most interest in the outcome of this case given that the majority of events alleged in the Complaint occurred in that state and since Plaintiff resided there and Defendant Johnson currently resides in that state, this Court will apply New Jersey law to Plaintiff's common law claims.

C.   **Supplemental Jurisdiction**

This Court has jurisdiction over Plaintiff's claims under New Jersey law pursuant to 28 U.S.C.A. § 1367. That statute, however, states that courts may decline to exercise supplemental jurisdiction over a state claim if the court–as here–has dismissed all federal claims in a case. Id.

Citing 28 U.S.C.A. § 1367, Defendant Johnson asks this Court to exercise its judicial discretion to dismiss Plaintiff's state law claims, without prejudice, in favor of a state tribunal. This Court, however, declines Plaintiff's invitation. Indeed, judicial economy, convenience and fairness to litigants persuade this Court to exercise supplemental jurisdiction over Plaintiff's state law claims.[5]

## CONCLUSION

For the foregoing reasons, Defendant Johnson's Motion for Summary Judgment is granted in part and denied in part. Judgment is entered in favor of Defendant Johnson and against Plaintiff on Counts One, Two, Three and Four, related to discrimination in violation of Title VII and the ADEA. Judgment is also entered in favor of Defendant Johnson and against Plaintiff on Plaintiff's age discrimination claims under the NJLAD (Count Nine). Further, judgment is entered in favor of Defendant Johnson and against Plaintiff on Count Twelve, related to a tort claim of Negligent Infliction of Emotional Distress.

The gender discrimination claims under Count Nine and Counts Ten and Eleven, related to Assault and Battery and Intentional Infliction of Emotional Distress, remain.

---

[5] The remaining state law claims include gender discrimination and sexual harassment under the NJLAD. Also remaining are tort claims of assault and battery and Intentional Infliction of Emotional Distress, which are not included in Defendant Johnson's motion for summary judgment.

Last, this Court declines Defendant Johnson's invitation to remand Plaintiff's remaining claims under New Jersey law.

An appropriate Order follows.