IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLORIA WASHINGTON, : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO.  05-CV-4186 |
| VOLUNTEERS OF AMERICA, ET AL., : | |
| : | |
| Defendants. : | |

**MEMORANDUM AND ORDER**

Tucker, J.                                                                                              August  ___, 2007

      Presently before this Court is the Motion for Summary Judgment of Defendant Volunteers of America (Doc. 57).  For the reasons set forth below, upon consideration of Defendant VOA's Motion , Plaintiff's Response thereto (Doc. 61) and Defendant's Reply (Doc. 64), this Court will grant in part and deny in part Defendant's Motion.

**BACKGROUND**[1]

      From the evidence of record, taken in light most favorable to Plaintiff, the pertinent facts are as follows.  Plaintiff Gloria Washington is a 55 year-old woman who began working at Volunteer of America ("VOA") as an Operations Coordinator in September 2003 at the age of 52.  Plaintiff worked at VOA approximately 16 months before VOA terminated her employment in January 2005.  Plaintiff generally maintains that she was terminated from employment because she refused to engage in a sexual relationship with her former supervisor, Defendant Huston

---

[1] Throughout Plaintiff's Response to Defendant's Motion, Plaintiff makes factual representations without clear citations to the record.  As this contravenes this Court's rules, this Court will not consider those alleged facts as it rules on Defendant's Motion.

Johnson and because of her age. VOA, however, states that Plaintiff was terminated from employment due to her unsatisfactory work performance.

As an Operations Coordinator at VOA, Plaintiff reported directly to Defendant Johnson, who was Chief Operating Officer at VOA. Plaintiff's primary job responsibilities included supporting and interacting with Johnson and three VOA program directors and their staff. Additionally, Plaintiff assisted the program directors to comply with program requirements and to maintain quality standards. Plaintiff also processed VOA personnel forms and conducted background checks.

In January 2004, at the end of Plaintiff's probationary employment period, Defendant Johnson rated Plaintiff's overall employment performance as "good" on her employee performance evaluation. In March 2004, VOA granted each Operations Coordinators, including Plaintiff, a raise in annual salary to $40,000.00 per year. To Plaintiff, this raise represented a $7,000.00 increase in her base salary. While Plaintiff met on a monthly basis with Johnson to review her work performance, Johnson did not complete any other official performance evaluations for Plaintiff. Further, Plaintiff's employment file does not show that she was reprimanded or disciplined for any violations of workplace policies or procedures while employed at VOA.

Plaintiff alleges that in January 2004, she had non-consensual sexual relations with Defendant Johnson while the two were in New Orleans for a VOA-sponsored conference. Plaintiff further alleges that in February 2004, she also had non-consensual sexual relations with Defendant Johnson at a hotel in New Jersey. Following these two sexual encounters, in March 2004, Plaintiff alleges that she informed Defendant Johnson that she had a boyfriend and that she

did not want to engage in any further sexual activity with Johnson.  Plaintiff also alleges that during this time, Defendant Johnson called her on her work cell phone to inquire her whereabouts and to otherwise engage in sexual flirtation.  Defendants VOA and Johnson, however, deny any sexual relations between Plaintiff and Johnson.

After she confronted Defendant Johnson and informed him that she no longer wanted to have a sexual relationship with him, Plaintiff alleges that she was subjected to unfavorable working conditions including being moved to an undesirable work cubicle, losing her access to a VOA-issued cell phone, having her authority undermined in the chain of command, and not receiving adequate training and support from Johnson in dealing with program coordinators.  Plaintiff also alleges that in December 2005, Defendant Johnson hit Plaintiff on the arm while both were working at VOA.

Plaintiff also alleges that she was treated unfavorably by Johnson because of her age.  Plaintiff was 53 years old at the time of her termination from employment at VOA.  Further, the record shows that Plaintiff was replaced by a male employee who was four years older than Plaintiff.

Defendant VOA maintains a policy prohibiting sexual harassment in the workplace.  VOA's policy includes a reporting scheme.  Plaintiff admits that she received a copy of VOA's policy.  Plaintiff alleges that in the weeks prior to her discharge from employment, she sought to meet with VOA human resources personnel to discuss her dissatisfaction with working with Defendant Johnson.  Plaintiff, however, did not meet with anyone in the human resources department prior to her termination from employment.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis of its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[I]f the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against opponent, even if the quality of the

4

movant's evidence far outweighs that of its opponent." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## DISCUSSION

In her Complaint, Plaintiff alleges that Defendant VOA (1) committed "quid pro quo" sexual discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New Jersey Law Against Discrimination ("NJLAD") (Counts Five and Nine); (2) retaliated against Plaintiff in violation of Title VII and the NJLAD (Counts Six and Nine); (3) subjected Plaintiff to a hostile work environment due to her gender in violation of Title VII and the NJLAD (Counts Seven and Nine); and (4) subjected Plaintiff to age discrimination in violation of the Age Discrimination in Employment Act ("ADEA) and the NJLAD (Count Eight and Nine). Further, Plaintiff alleges that Defendant VOA is liable to Plaintiff under tort claims of assault and battery (Count Ten), Intentional Infliction of Emotions Distress (Count Eleven), and Negligent Infliction of Emotional Distress (Count Twelve).

Defendant VOA ask this Court to grant summary judgment in their favor on all counts of the Complaint directed towards VOA on the grounds that Plaintiff has failed to state an actionable claim for discrimination on the basis of gender under Title VII and the NJLAD or on the basis of age under the ADEA and the NJLAD. Defendants also state that Plaintiff's retaliation claim and common law tort claims must be dismissed against Defendant VOA.

The Court will review each claim in turn.

A.     **Discrimination on the Basis of Gender Under Title VII and the NJLAD**[2]

Under Title VII it unlawful for any employer "to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2 (a)(1). Here, Plaintiff alleges that she was terminated from employment and treated less favorably by VOA because of her gender. Further, Plaintiff alleges that Defendant Johnson sexually harassed her by creating a hostile work environment and conditioning her continued employment on whether she submitted to sexual advances.

Defendant argues that it is entitled to summary judgment on Plaintiff's gender discrimination claims because Plaintiff cannot show that the reasons proffered by VOA and Johnson as to why Plaintiff was terminated are really a pretext for discrimination. Defendant also argues that Plaintiff cannot establish that she was subjected to sexual harassment because she cannot show that Johnson's sexual advances were unwelcome or that the harassment was severe and pervasive. This Court disagrees.

   1.     "Quid Pro Quo" Sexual Discrimination

While in Counts Five and Nine Plaintiff purports to bring a claim of "quid pro quo sexual discrimination," these claims are more properly labeled disparate impact gender discrimination claims. Indeed, Plaintiff essentially avers that she was treated unfavorably by VOA and ultimately terminated from employment on account of her gender.

Disparate treatment claims brought under Title VII and the NJLAD are analyzed using the

---

[2] In deciding gender discrimination cases under the NJLAD, courts generally look to federal law interpreting Title VII. Bergen Commercial Bank v. Sisler, 723 A.2d 944, 949-50 (1999). Accordingly, this Court will apply the same analysis to Plaintiff's gender discrimination claims under Title VII and the NJLAD.

familiar framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under this analysis, Plaintiff must first make a prima facie showing of gender discrimination by establishing that (i) she belongs in the protected class; (ii) she was qualified for the position; (iii) she suffered an adverse employment action; and (iv) circumstances existed that support an inference of discrimination.  Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-19 (3d Cir. 2000).  Once Plaintiff has established a prima facie case, the burden shifts to Defendant to produce evidence of a legitimate nondiscriminatory reason for terminating Plaintiff's employment.  Simpson v. Kay Jewlers, 142 F. 3d 639, 644 n.5 (3d Cir. 1998).  Plaintiff must then demonstrate that Defendant's articulated reason was not the actual reason for the employment decision, but rather a pretext for discrimination.  Id.

     Here, the Court finds that Plaintiff has met her burden of establishing a prima facie case of gender discrimination.  The Defendant VOA, however, argues that Plaintiff cannot show pretext to support a gender discrimination claim.  Defendant VOA argues that the record shows that VOA terminated Plaintiff's employment for a legitimate, nondiscriminatory reason, namely because it determined that Plaintiff could not effectively perform her job duties.

     In order for Plaintiff to "survive summary judgment when the employer has articulated a legitimate nondiscriminatory reason for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Simpson, 142 F.3d at 644 (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).  To discredit Defendant's articulated reason, Plaintiff must point to "weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them unworthy of credence" and therefore infer that the proffered nondiscriminatory reason "did not actually motivate" the employer's action.  Fuentes, 32 F.3d at 764-65 (internal quotations omitted).

Here, Plaintiff has come forward with sufficient evidence from which a reasonable jury could conclude that Defendant VOA's articulated reasons for termination are in fact a pretext for discrimination.  Namely, Plaintiff may rely on her previous work evaluations, and lack of reprimands or disciplines in her work file, amongst others.  Accordingly, this Court denies Defendant VOA's summary judgment motion as to Counts Five and Nine, related to gender discrimination.

        2.      Quid Pro Quo and Hostile Work Environment Harassment

"A plaintiff who claims that she has been sexually harassed has a cause of action under Title VII if the sexual harassment was either a quid pro quo arrangement, or if the harassment was so pervasive that it had the effect of creating an intimidating, hostile, or offensive work environment."  Andrews v. Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990).  Here, Plaintiff asserts both.

To establish a claim for hostile work environment, Plaintiff must show that: (1) she suffered intentional discrimination because of her gender; (2) the discrimination was pervasive and regular; (3) the discrimination affected her; (4) the discrimination would detrimentally affect a reasonable person of the same gender in that position; and (5) respondeat superior liability applies.  Andrews, 895 F.2d at 1482.  Further, "[w]hen determining whether an environment is sufficiently hostile or abusive, the court must look at the totality of the circumstances."  Id.  To

establish a quid pro quo harassment claim, however, Plaintiff must show that her response to unwelcome advances was subsequently used as a basis for an adverse employment decision. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281-82 (3d Cir. 2000).

Defendant contend that Plaintiff's harassment claims should be dismissed because she is unable to establish that her supervisor's sexual advances were unwelcome or that the conduct she complains about was sufficiently severe and pervasive to amount to a hostile work environment under the law. This Court, however, finds that there are genuine issues of material fact as to whether Johnson's comments and actions occurred because of Plaintiff's gender; were severe or pervasive enough to create a hostile work environment; and were so severe or pervasive that a reasonable woman would believe that the terms and conditions of her employment had been altered. Further, there are genuine questions of fact regarding whether the relationship between Plaintiff was consensual or unwelcome by Plaintiff.[3]

Accordingly, this Court denies Defendant VOA's motion for summary judgment as to Counts Seven and Nine, related to sexual harassment in violation of Title VII and the NJLAD.

**B.     Retaliation Under Title VII and the NJLAD**

Defendant VOA argues that Plaintiff has failed to establish a cognizable retaliation claim under Title VII and the NJLAD because Plaintiff did not engage in protected activity and because there exists no causal connections between the protected activity and adverse employment action. This Court disagrees.

To establish a prima facie retaliation claim under Title VII or the NJLAD, Plaintiff must

---

[3] Indeed, there is also question of fact as to whether or not the sexual encounters between Johnson and Plaintiff even occurred.

9

show that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.  Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001).   The Third Circuit has also explained that acceptable forms of "protected activity" under Title VII include formal charges of discrimination as well as informal protests of discriminatory employment practices, including <u>making complaints to management</u>, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges.  Barber v. CSX Distribution Servs., 68 F.3d 694, 702 (3d Cir. 1995) (internal citation omitted) (emphasis added).

  In her Complaint, Plaintiff avers that Defendant VOA retaliated against Plaintiff in violation of Title VII and the NJLAD soon after she complained to Defendant Johnson about his alleged sexual advances.  This is protected activity.  Further, the retaliation Plaintiff complains about includes being moved to an undesirable work cubicle, losing her access to a VOA-issued cell phone, undermining her authority with co-workers, not receiving adequate training and support from Johnson in dealing with program coordinators, and ultimately termination.  Defendant's arguments regarding protective activity and causal connections are unavailing.  Plaintiff, therefore, has established a prima facie case of retaliation.

  Additionally, as explained above, there exists material questions of fact regarding whether Defendant's reasons for discharging Plaintiff are pretext for discrimination.  Accordingly, this Court denies Defendant VOA's motion for summary judgment as to Counts Six and Nine, related to retaliation in violation of Title VII and the NJLAD.

C.      **Discrimination on the Basis of Age Under the ADEA and NJLAD**[4]

The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, prohibits an employer from, among other things, discharging or otherwise discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a prima facie case of age discrimination under the ADEA and the NJLAD, Plaintiff must show that she (1) is a member of the protected class, *i.e.*, at least forty years of age; (2) was qualified for the position; (3) suffered an adverse employment decision; and (4) in the case of demotion or discharge, was replaced by a sufficiently younger person to create an inference of age discrimination. 29 U.S.C. 631(a)(2); Simpson v. Kay Jewlers, 142 F. 3d 639, 644 n.5 (3d Cir. 1998). Once Plaintiff has established a prima facie case, the burden shifts to Defendants to produce evidence of a legitimate nondiscriminatory reason for eliminating Plaintiff's position. Id. Plaintiff must then demonstrate that Defendants' articulated reason was not the actual reason for the employment decision, but rather a pretext for discrimination. Id.

Here, Plaintiff has failed to even establish a prima facie case of age discrimination. While she is a member of the protected class, was seemingly qualified for her position, and suffered an adverse employment decision, Plaintiff cannot show that she was replaced by a sufficiently younger person to create an inference of age discrimination. Indeed, the individual who replaced Plaintiff was four years her senior. Moreover, nothing in the record – apart from Plaintiff's bald assertion to the contrary – supports an inference of discrimination based on age.

---

[4] In deciding age discrimination cases under the NJLAD, courts generally look to federal law interpreting the ADEA. Bergen Commercial Bank v. Sisler, 723 A.2d 944, 949-50 (N.J. 1999). Accordingly, this Court will apply the same analysis to Plaintiff's age discrimination claims under the ADEA and the NJLAD.

The bulk of the allegations of discrimination made by Plaintiff deal with gender, not age.

Because there are no issues of material fact in dispute, the Court will grant Defendant VOA's motion for summary judgment on Plaintiff's age discrimination claims under the ADEA and the NJLAD.[5]

### D.     Common Law Tort Claims[6]

#### 1.     Assault and Battery

An employer is vicariously liable for an employee's intentional tort upon another only when the tort occurs within the scope of the employee's employment. Conduct that is deemed within the scope of employment "is the kind that the servant is employed to perform; it occurs substantially within the authorized time and space limits; and it is actuated, at least in part, by purpose to server the master." Di Cosala v. Kay, 450 A.2d 508, 513 (N.J. 1982) (citing Restatement (Second) of Agency § 228 (1957)).  In her Complaint and response to summary judgment, Plaintiff argues that VOA is liable to her due to Johnson's conduct – namely, non-consensual sexual contact and hitting Plaintiff on her arm.

Plaintiff fails to show that Johnson's alleged conduct occurred within the scope of his employment.  Indeed, nothing in the record here suggests that Defendant VOA is vicariously liable for Johnson's alleged assault and battery upon Plaintiff.  Accordingly, this Court grants Defendant VOA's summary judgment motion on Plaintiff's assault and battery claim.

---

[5] To the extent Plaintiff alleges that she was subject to a hostile work environment due to her age, this claims is also dismissed as a matter of law.

[6] Because New Jersey has the most interest in the outcome of this case given that the majority of events alleged in the Complaint occurred in that state and since Plaintiff resided there and VOA has a principal place of business in that state, this Court will apply New Jersey law to Plaintiff's common law claims.

2.	Intentional Infliction of Emotional Distress

In order to prove a claim for intentional infliction of emotional distress ("IIED"), Plaintiff must prove that Defendant VOA acted "intentionally or recklessly." Buckley v. Trenton Savings Fund Soc., 544 A.2d 857, 863 (N.J. 1988). Defendant's conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Restatement (Second) of Torts, § 46, cmt. d (1965)). Plaintiff also must show that Defendant's actions were a proximate cause of the emotional distress, and that the emotional distress is "so severe that no reasonable [person] could be expected to endure it." Id. at 863-64 (quoting Restatement (Second) of Torts, § 46, cmt. j). The Third Circuit, however, has stated that "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988).

The Court finds that while the conduct alleged here may be sufficiently outrageous to establish an IIED claim, like with the assault and battery claim, Plaintiff has failed to show that Defendant VOA is liable under a theory of *respondeat superior*. Accordingly, this Court grants Defendant VOA's summary judgment motion on Plaintiff's IIED claim.

3.	Negligent Infliction of Emotional Distress

In the Complaint, Plaintiff asserts a claim of negligent infliction of emotion distress ("NIED") against Defendant VOA. Defendant, however, argues that this common law claim must be dismissed because New Jersey law provides an exclusive remedy by which an employee may recover. This Court agrees.

The New Jersey Workers' Compensation Act, N.J.S.A. 34:15-8, provides an exclusive remedy by which an employee may recover damages for injuries caused by an employer's negligence. Accordingly, Plaintiff cannot seek damages for workplace negligence – as alleged here – in this Court. Plaintiff may, however, seek benefits under New Jersey's workers' compensation scheme.

Accordingly, this Court will grant Defendant's summary judgment motion on Plaintiff's NIED claim.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted in part and denied in part. Judgment is entered in favor of Defendant VOA and against Plaintiff on Counts Eight and Nine, related to age discrimination in violation of the ADEA and the NJLAD. Further, judgment is entered in favor of Defendant VOA and against Plaintiff on Counts Ten, Eleven and Twelve, regarding tort claims of assault and battery, Intentional Infliction of Emotions Distress and Negligent Infliction of Emotional Distress.

Counts Five and Nine (gender discrimination in violation of Title VII and the NJLAD), Counts Six and Nine (retaliation in violation of Title VII and the NJLAD), and Counts Seven and Nine (sexual harassment in violation of Title VII and the NJLAD) remain.

An appropriate Order follows.